**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
AP LINKS, LLC, and ST. ANNE'S
DEVELOPMENT COMPANY, LLC,

                            Plaintiffs,

          - against -

JAY EDMUND RUSS and RUSS & RUSS, P.C.,

                            Defendants.
-----------------------------------------------------------X

**ORDER**

CV 09-5437 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiffs AP Links, LLC ("AP Links") and St. Anne's Development Company, LLC ("SADC") (collectively, "Plaintiffs") filed this diversity action on November 16, 2010, alleging that Defendants Jay Edmund Russ ("Russ") and Russ & Russ, P.C. (collectively, "Defendants") breached their fiduciary duties and tortiously interfered with a contract. Presently before the Court is Plaintiffs' motion to compel non-party Neal Trabich and the Defendants to produce, respectively, documents in response to a subpoena and requests for production of documents. Plaintiffs also seek to have the Court overrule Defendants' and Trabich's objections asserted on the grounds of attorney-client privilege. *See* DE 54 ("Pls.' Mot."). Plaintiffs assert that any claim of attorney-client privilege has been waived and/or vitiated by the crime-fraud exception. Defendants and Trabich submit that Plaintiffs' motion should be denied because no waiver occurred and Plaintiffs' evidentiary submissions are insufficient to trigger the crime-fraud exception.

## I. BACKGROUND

As is the case with certain other lawsuits filed in New York and Maryland, the present action stems from: (1) a November 8, 2000, Consulting Agreement entered into by AP Links and Global Golf, Inc.[1]; and (2) a May 2, 2006, Facility Agreement entered into by, *inter alia*, SADC[2] and Neal and Terry Trabich (hereafter, "the Trabiches"), which enabled the Trabiches to borrow up to $1 million dollars on a revolving credit basis. *See* Compl. ¶¶ 7-29. In this particular action, Plaintiffs are now suing the attorney who, at one point, represented Global Golf and the Trabiches.

Plaintiffs allege in the Complaint that sometime in October 2006, the Trabiches sought the advice of Russ to extricate themselves and Global Golf from the obligations owed to SADC and AP Links under the Consulting Agreement and the Facility Agreement (collectively, the "Agreements"). *Id.* ¶ 30. On November 3, 2006, the Defendants, on behalf of Global Golf and the Trabiches, filed suit against AP Links, SADC and its principals in the Supreme Court, Nassau County (hereafter, "Nassau County Action") seeking to void the Agreements under legal theories of criminal and civil usury.[3] *Id.* ¶¶ 36, 66. Plaintiffs assert that Russ did not serve AP Links or

---

[1] AP Links is owned by Aaron Young while Global Golf is owned by Neal Trabich.

[2] SADC is a limited liability company with only two members, one of which is Aaron Young.

[3] The Supreme Court, Nassau County dismissed the claims associated with the Facility Agreement since that agreement contained a forum selection clause requiring any litigation to occur in Maryland. The Defendants ultimately discontinued the claims against AP Links regarding the Consulting Agreement. Subsequently, SADC sued the Trabiches over the Facility Agreement in the District of Maryland while AP Links sued Global Golf and the Trabiches over the Consulting Agreement in the Eastern District of New York.

2

SADC or otherwise notify them of this lawsuit until February or March 2007. *Id.* ¶ 40. During this gap in time, Plaintiffs contend that Russ represented Global Golf, the Trabiches and an entity named "Confer Bethpage LLC" ("Confer Bethpage") in a December 21, 2006, Asset Purchase Agreement ("APA") whereby Confer Bethpage acquired certain assets of Global Golf.[4] *Id.* ¶¶ 40-43. Also on this date, Gordon Lenz loaned $500,000 to Neal Trabich, and in return, Trabich granted Lenz a mortgage on personal property located at 1574 Laurel Hollow Road. *Id.* ¶ 44. However, this latter property was already serving as collateral for SADC under the Facility Agreement. *Id.* Plaintiffs allege that Russ, knowing that Trabich promised in the Facility Agreement not to further encumber the collateral property, advised the Trabiches to grant and record the mortgage to Lenz in direct violation of the Facility Agreement. *Id.* ¶¶ 49, 63.

Pursuant to an Escrow Agreement executed on December 21, 2006, all monies paid under the APA were required to be paid to Russ, as the agreed upon Escrow Agent. *Id.* ¶ 53. According to the Plaintiffs, this Escrow Agreement granted Russ absolute discretion to determine which debts of Global Golf would be paid out of the $2.4 million received under the APA. *Id.* ¶ 54. It is alleged that on January 25, 2007, Russ paid his firm $250,000, disguised as legal fees, out of the escrowed funds that were supposed to be paid to Global Golf's creditors. *Id.* ¶ 56. It is also alleged that Russ caused monies to be paid out of the escrowed funds to other individuals and entities that were not bona fide creditors of Global Golf. *Id.* ¶ 58. These and other actions by the Defendants serve as the basis for Plaintiffs' contention that Defendants procured breaches of the Consulting Agreement and the Facility Agreement.

---

[4] Confer Bethpage is owned by Gordon Lenz. Plaintiffs allege that Defendants formed Confer Bethpage on behalf of Lenz for the purpose of entering into the APA.

On June 15, 2011, Plaintiffs served a subpoena on Neal Trabich seeking the production of 89 specific e-mail exchanges between Trabich and Russ during the period of October 9, 2006, through December 17, 2007.[5] *See* Pls.' Mot., Ex. B. On July 8, 2011, Trabich wrote to Plaintiffs' counsel indicating that "I do not waive the attorney client privilege, attorney client confidentiality or the attorney work product privilege, or any other applicable privileges." *Id.*, Ex. C. These e-mails were also requested from the Defendants as part of Plaintiffs' First Request for Production of Documents. Defendants served their responses on August 26, 2011, objecting to each of the requests on the basis of attorney-client privilege. *Id.*, Ex. D. The responses by Neal Trabich and the Defendants serve as the basis for the instant motion to compel.

## II. DISCUSSION

Since the basis for subject matter jurisdiction in this action is diversity of parties, the attorney-client privilege is governed by New York State law. *See Aiossa v. Bank of America*, No. CV 10-1275, 2011 WL 4026902, at *3 (E.D.N.Y. Sept. 12, 2011); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (citing Fed. R. Evid. 501). As previously indicated, the Plaintiffs present the Court with two arguments as to why the attorney-client privilege should not attach to the e-mails in question: (1) the crime-fraud exception applies; and (2) the privilege was waived by Neal Trabich. Each contention will be addressed in turn.

---

[5] It appears that the Plaintiffs became aware of these e-mail exchanges through a privilege log that was served on them during the exchange of discovery in three other actions filed in this District.

A.      **Crime-Fraud Exception**

"Under New York law, the attorney-client privilege protects confidential communications between client and counsel where such communications are made for the purpose of providing or obtaining legal advice."[6] *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (citing N.Y. C.P.L.R. 4503(a)(1)). However, the privilege "may not be invoked where it involves client communications that may have been in furtherance of a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct." *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 1 A.D. 3d 223, 224, 767 N.Y.S.2d 228 (1st Dep't 2003); *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client privilege . . . are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.").

"In the Second Circuit, application of the crime-fraud exception requires a party to 'demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof.'" *Linde v. Arab Bank*, 608 F. Supp. 2d 351, 357 (E.D.N.Y. 2009) (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)); *accord United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). The Second Circuit has defined "probable cause" in this context to mean "a reasonable basis for believing that the objective was fraudulent." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1039; *see also*

---

[6]      New York law on attorney-client privilege is substantially similar to the federal doctrine. *Bowne*, 150 F.R.D. at 470.

*Aiossa*, 2011 WL 4026902, at *6 ("[C]ourts in the Southern and Eastern Districts of New York have applied a standard more demanding than a simple, if reasonable, suspicion of fraud and less demanding than fraud shown by a preponderance of the evidence.") (internal quotation marks and citations omitted). "Once there is a showing of factual basis, the decision whether to engage in an *in camera* review of the evidence lies in the discretion of the district court." *Shahinian v. Tankian*, 242 F.R.D. 255, 258 (S.D.N.Y. 2007).

The Plaintiffs' theory behind the applicability of the crime-fraud exception begins with Neal Trabich's retention of Russ in October 2006 in an attempt to shed financial obligations under the Agreements. After consulting with Russ, Neal Trabich took the position that the Agreements were usurious and unenforceable; the Nassau County Action brought by Russ on behalf of the Trabiches followed. However, after the Nassau County Action was dismissed for lack of subject matter jurisdiction, SADC brought suit on April 24, 2007, in the District of Maryland, asserting claims against the Trabiches for breach of contract and fraud pursuant to the Facility Agreement (hereafter, "Maryland Action"). Notwithstanding express language in the Facility Agreement requiring that the $1 million loan be used solely for commercial purposes – specifically, to fund the construction of the Saint Anne's golf course – the Trabiches took the position, in sworn statements, that the loan was really intended for personal use, not solely for commercial purposes. The Court specifically notes that these sworn statements were contained in affidavits and pleadings that were filed in actions aside from the Maryland Action. However,

these statements were also submitted as evidence in the Maryland Action during the September 14, 2009 bench trial before Judge Quarles, Jr.[7]

Plaintiffs maintain that the Trabiches' position regarding the loan's purported purpose being for personal use remained the same until May 21, 2008, when Judge Quarles granted SADC's motion for summary judgment on its breach of contract claim. Leaving only claims grounded in fraud, Neal Trabich changed his position and testified during the bench trial that the funds borrowed under the Facility Agreement were intended to be used for commercial proposes. *See* Pls.' Mot., Ex. F at 141-42. Based on the above, Plaintiffs contend that the Trabiches' conduct, with the advice and assistance of Russ, evidences fraud. The Court disagrees and finds that Plaintiffs' evidentiary submissions fail to establish the applicability of the crime-fraud exception.

The first notable issue with Plaintiffs' fraud theory is that the Plaintiffs do not identify what specific conduct establishes the fraud that would trigger the crime-fraud exception. This problem is exemplified in following portion of Plaintiffs' motion:

> When it was the Trabichs' legal strategy to swear there was no commercial purpose for the loan, that is what they did. When it became in their interest to swear that it was their intent all along to use the funds solely for commercial purpose, Mr. Trabich changed his story under oath before a federal judge, and rationalized the prior sworn statements as mere 'legal strategy.' Trabich's conduct, with the advice and assistance of Jay Russ, was clear fraud.

---

[7] In fact, certain findings of fact contained in Judge Quarles' August 23, 2010 Memorandum Opinion were based on these sworn statements. *See* Pls.' Mot., Ex. A ¶¶ 69-72, 86-90.

Pls.' Mot. at 2. Plaintiffs leave the Court to assume that the "clear fraud" was Neal Trabich's testimony at trial that the funds borrowed under the Facility Agreement were intended to be used solely for commercial proposes.[8] While the Court does not necessarily agree with the Defendants' characterization that the differing nature of Neal Trabich's trial testimony regarding the loan was merely a change in "legal strategy," such a change hardly provides a reasonable basis for this Court to determine that a crime or fraud had been committed. For one thing, no detrimental reliance on this testimony has been shown. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (listing elements of fraud). In fact, the Court is in no position to find fraudulent purpose behind the contradictory nature of Neal Trabich's trial testimony since SADC was fully aware of the two distinct positions that the Trabiches took regarding the loan. This testimony, when compared to the statements made by the Trabiches in other actions, certainly calls into question Neal Trabich's credibility as a witness. However, it does not rise to the higher standard of more than "a simple, if reasonable suspicion of fraud" applied by courts in the Eastern and Southern Districts of New York. *Aiossa*, 2011 WL 4026902, at *6 (citing *In re Omnicom Grp. Inc. Sec. Litig.*, No. 02 Civ. 4483, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007)).

---

[8] The Court notes that Judge Quarles, Jr. found the Trabiches liable for fraud "based on their false representations in the Facility Agreement, regarding the use and purpose of the funds." *See* Pls.' Mot. Ex. A at 26. This fraudulent activity occurred on May 2, 2006, the date the parties entered into the Facility Agreement. As such, this finding of fraud by Judge Quarles, Jr. cannot serve as the basis for the crime-fraud exception since the Defendants were not approached by the Trabiches for advice regarding the Agreement previously executed by the Trabiches until sometime in October 2006.

Even had the Plaintiffs demonstrated that there was probable cause to believe that a crime or fraud was perpetrated, they have nonetheless failed to produce any evidence to enable the reasonable conclusion that the e-mails at issue were in furtherance of and intended to facilitate the fraud or crime. *See In re Richard Roe, Inc.*, 68 F.3d 38 at 40 (stating that the crime-fraud exception "applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud"); *Aiossa*, 2011 WL 4026902, at *6. ("[T]here are two separate probable cause showings required to invoke the crime/fraud exception: (1) probable cause to believe that a fraud or crime has been perpetrated, and (2) probable cause to believe that the communications at issue were in furtherance of and intended to facilitate the fraud or crime."). The evidence submitted by Plaintiffs only demonstrates that the Defendants represented the Trabiches for a period where their position, namely, that the loan was intended for personal use, was consistent. According to the Plaintiffs, the purported fraud – which was the change in position regarding the loan – occurred after Judge Quarles, Jr. issued his summary judgment opinion on May 21, 2008. However, Defendants indicate that the change in position occurred when the Trabiches were represented by other counsel. In any event, the e-mails sought by the Plaintiffs were exchanged between the period of October 9, 2006, and December 17, 2007. Since all the e-mails were exchanged prior to the purported fraud, there is no basis for this Court to find that these e-mails were in furtherance of a fraud.

B.  **Waiver**

The Plaintiffs also argue, in passing, that Neal Trabich waived his right to assert that the e-mails at issue are protected by the attorney-client privilege. Plaintiffs' maintain that Neal Trabich (1) testified that Defendant Russ "advised him" that the Facility Agreement was usurious; and (2) admitted that the sworn statements were part of a legal strategy. As such, the Plaintiffs claim that Trabich "waived any right he might otherwise have had to assert the attorney-client privilege over communications with Mr. Russ as to his opinion that the Facility Agreement was usurious, as well as communications relating to the legal strategies involved in implementing Mr. Trabich's objective to void the agreements." Pls.' Mot. at 3. After considering the testimony of Neal Trabich, the Court finds Plaintiffs' waiver theory, known as subject-matter waiver, to be legally and factually unsupported.

Voluntary disclosure of attorney-client communications "during judicial proceedings may waive the privilege as to the disclosed information as well as all the otherwise privileged information relating to the same subject-matter of the disclosed information." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94 (W.D.N.Y. 2011) (citing *In re von Bulow*, 828 F.2d 94, 101-02 (2d Cir. 1987)); *see also Brewer v. Hall*, No. CV 00-6072, 2005 WL 2219304, at *2 (E.D.N.Y. Sept. 12, 2005) (stating that "[w]here there has been a disclosure of a privileged communication or a portion of such communication in the context of a lawsuit," courts in this Circuit apply a rule of "subject-matter waiver" and "require disclosure of all otherwise privileged communications on the same subject"). The Plaintiffs argue that when Neal Trabich admitted the sworn statements were part of a legal strategy and testified that Russ "advised him" that the Facility Agreement was usurious, he waived any attorney-client privilege which may have

otherwise attached to the e-mails in question. Even had Neal Trabich testified as Plaintiffs assert,[9] the Court finds that such testimony does not contain any substance of the attorney-client communications which would enable a broader subject-matter waiver of all the e-mails at issue. *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2009 WL 3334365, at *3 (E.D.N.Y. Oct. 14, 2009) (dismissing subject-matter waiver argument based on testimony referencing defense strategies developed in consultation with counsel since such testimony did not reveal the substance of the communications); *United States v. McDonald*, No. 01-CR-1168, 2002 WL 31956106, at *3 (E.D.N.Y. May 9, 2002) (finding no waiver where defendant "did not reveal the substance of counsel's advice; rather, he indicated only that [the entity] was formed on the advice of counsel."). Accordingly, the Court rejects Plaintiffs' contention that Neal Trabich waived the attorney-client privilege.

## V. CONCLUSION

For the reasons set forth above, the Plaintiffs' motion to compel is hereby DENIED. Since the Court held the remaining deadlines in the Amended Case Management and Scheduling Order in abeyance pending its decision on this motion, the parties are directed to participate in a Telephone Conference on August 9, 2012, at 10:00 a.m. in order to discuss the remaining pre-trial deadlines. Plaintiffs' counsel is directed to initiate this call to Chambers with all counsel on the line.

**SO ORDERED.**

---

[9] The Court notes that nowhere in the trial transcript is there any testimony from Neal Trabich that Russ "advised him" that the Facility Agreement was usurious.

Dated: Central Islip, New York
July 30, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge