**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
AP LINKS, LLC, and ST. ANNE'S
DEVELOPMENT COMPANY, LLC,

                      Plaintiffs,                      **DECISION**
                                                               **AND ORDER**
        - against -

                                                               CV 09-5437 (TCP) (AKT)

JAY EDMUND RUSS and RUSS & RUSS, P.C.,

                      Defendants.
-----------------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Plaintiffs AP Links, LLC ("AP Links") and St. Anne's Development Company, LLC ("SADC") (collectively, "Plaintiffs") commenced this diversity action alleging that Defendants Jay Edmund Russ ("Russ") and Russ & Russ, P.C. (collectively, "Defendants") breached their fiduciary duties to the Plaintiffs. In addition, Plaintiffs claim that the Defendants tortiously interfered with a contract SADC entered into with Neal and Terry Trabich (hereafter, "the Trabiches") in which SADC arranged a credit line up to $1 million with a third-party lender (the "Facility Agreement"). *See* Compl. [DE 1] ¶¶ 24-25, 79-82. The credit line was for the Trabiches' use to help finance the construction of a golf course. Compl. ¶¶ 24-25.

As is the case with certain other lawsuits filed in New York and Maryland involving these parties,[1] the present action stems from: (1) a November 8, 2000 Consulting Agreement

---

[1] For the record, the Court notes that these parties (and others mentioned in the course of this Order) are engaged in multiple litigations here in the Eastern District of New York. The relevant cases are: *AP Links, LLC v. Global Golf Inc., et al*, 08-cv-3602; *AP Links, LLC, et al. v. Russ et al.*, 09-5437; *Saint Annes Development Company, LLC, et al. V. Trabich, et al.*, 11-cv-3323; *Lenz, et al. v. Young, et al.*, 08-cv-3795.

entered into by AP Links and Global Golf, Inc.; and (2) the May 2, 2006 Facility Agreement entered into by, *inter alia*, SADC and the Trabiches.[2]  *See* Compl. ¶¶ 7-29.

In this particular action, Plaintiffs are now suing Defendant Jay Russ, the attorney who, at one point, represented Global Golf and the Trabiches.  *See generally* Compl.  Plaintiffs have asserted three causes of action, the first two on behalf of Plaintiff AP Links and the third on behalf of Plaintiff SADC.  The first cause of action, breach of fiduciary duty, is based on Plaintiffs' claim that Defendant owed AP Links a duty of care since AP Links was a creditor of Global Golf.  Compl. ¶¶ 68-72.  In its second claim, AP Links states that as a creditor of Global Golf, AP Links was intended to be a third-party beneficiary of a certain Escrow Agreement created by an Asset Purchase Agreement between Global Golf and the company Confer Bethpage, wherein Confer Bethpage acquired certain assets of Global Golf.  Plaintiffs contend that the Defendants caused AP Links to lose that benefit by, among other things, making payments to non-creditors of Global Golf and not to AP Links.  Compl. ¶¶ 73-78.  The third claim asserts tortious interference with contract.  Here, Plaintiffs allege that the Defendants procured the breach of the Facility Agreement by leveraging Defendant Russ' role as counsel for both sides of the transaction in which he advised the Trabiches to grant and record a mortgage on their property in direct violation of the Agreement.  Compl. ¶¶ 79-82.

Non-party witness Paul Batista now moves to quash a subpoena (the "Subpoena") served upon him by the Plaintiffs.  *See* Batista Letter Mot. to Quash (the "Batista Mot.") [DE 95].  The documents at issue relate to (i) communications between Batista and certain of his clients; (ii) invoices for legal services rendered in a related case, as well as fee agreements with the

---

[2]  AP Links is owned by Aaron Young while Global Golf is owned by Neal Trabich.

2

Trabiches and/or Global Golf; and (iii) documents related to purported conflicts of interest. *See* Subpoena [DE 91-1]. Plaintiffs oppose the motion, arguing primarily that the documents sought are relevant to this action. *See* Pls.' Opp. to the Batista Mot. ("Pls.' Opp.") [DE 96]. Defendants have submitted a letter in support of the motion. Defs.' Letter in Supp. of the Batista Mot. ("Defs.' Letter") [DE 97].[3] For the following reasons, Attorney Batista's motion is GRANTED in part and DENIED in part.

I. **RELEVANT BACKGROUND**

As noted, this dispute involves claims for, *inter alia*, tortious interference with contract and breach of fiduciary duty related to Defendants' alleged disbursement of the assets of the insolvent golf course management company, Global Golf, which was owned and operated by Neal Trabich. *See generally* Compl. Specifically, Plaintiffs allege that Defendant Jay Russ improperly paid others who were not *bona fide* creditors of Global Golf from the company's escrow fund when he should have paid Plaintiffs. *Id.* Plaintiffs contend that some of the escrow funds were improperly paid to Attorney Batista and his firm for lawsuits related to the underlying incidents giving rise to this matter, but where Global Golf and the Trabiches were not parties. *Id.* In light of the previous motions filed in this action, the Court assumes familiarity with the lengthy factual history of this litigation as well as the specific underlying allegations set forth in the Complaint.

The Court notes that there are (or were) three other cases in this Court arising from the incidents underlying the Complaint, in addition to at least two cases in the United States District

---

[3] Plaintiffs filed a request to submit a reply to Defendants' letter. DE 98. The Court is DENYING Plaintiffs' request.

Court for the District of Maryland. *See* Pls.' Opp. 2 n.2. Attorney Batista represented the following parties in those matters: Neil and Terry Trabich, Global Golf, Confer Bethpage, LLC, Gordon Lenz and Jay Russ.

A brief review of the matters in this District is helpful to the resolution of this motion. SADC filed suit against Gordon Lenz on April 29, 2008 in *SADC v. Lenz,* No. 08-cv-1730 (the "SADC Action."). According to SADC, Lenz, through his company Confer Bethpage LLC, acquired certain assets from Global Golf under the terms of an Asset Purchase Agreement and became the assignee of the lucrative Bethpage Licensing Agreement. *See generally* SADC Action Compl. Lenz also loaned Terry Trabich $500,000 pursuant to a mortgage and note on the property that was the basis of the Facility Agreement with SADC. *Id.* As such, SADC alleges tortious interference with contract since the Facility Agreement allegedly prohibited encumbrances from being placed on the property. *Id.* This Court held a settlement conference with the parties in the SADC Action and that case was closed on January 24, 2013. Lenz was represented by Paul Batista in the SADC Action.

In *AP Links, LLC v. Global Golf, Inc.*, 08-cv-3602 (the "AP Links Action"), AP Links filed a complaint on March 18, 2008 against Global Golf, the Trabiches, Confer Bethpage, and Gordon Lenz for breach of the Consulting Agreement. *See generally* Global Golf Action Compl. [CV 08-3602 DE 1]. The Trabiches were dismissed from that action, without prejudice [CV 08-3602 DE 167], and Lenz and Confer Bethpage were dismissed from the action with prejudice [CV 08-3602 DE 174]. The remaining parties filed a consent judgment in 2013, and a final judgment was entered against Global Golf in the amount of $75,000 on February 13, 2013 [CV

08-3602 DE 177]. Paul Batista represented Global Golf, the Trabiches, Confer Bethpage, and Gordon Lenz in the AP Links Action.

On November 17, 2008, Lenz and Russ filed a complaint against Young and SADC in *Lenz et al. v. Young et al.*, 08-cv-3795 (the "Defamation Action"). Lenz and Russ claimed Young made defamatory statements published in a Maryland newspaper regarding the facts giving rise to these litigations. *See generally* Defamation Action Compl. [CV 08-3795 DE 1]. Defendants were granted summary judgment on May 3, 2011 [CV 08-3795 DE 113]. Plaintiffs appealed but the decision was affirmed by the Second Circuit, [CV 08-3795 DE 117], and the case remains closed. Attorney Batista represented Plaintiffs Lenz and Russ in the Defamation Action.[4]

As noted, the action now before this Court deals primarily with the alleged wrongdoing of Defendant Russ. Although some of the escrow payments were made for the defense of lawsuits in which the Trabiches and Global Golf were parties, the propriety of the escrow payments, Plaintiffs maintain, would depend on the case in which the services were performed and the nature of those services. *See generally* Compl.

On December 20, 2012, Plaintiffs wrote to the Court stating that Neal and Terry Trabich had executed waivers of the attorney-client privilege and work product privilege on behalf of themselves and Global Golf. DE 68. The waivers were attached to the submission. *Id.* Plaintiffs asserted that, in light of the waivers, they were entitled to certain discovery materials.

---

[4] According to the Complaint in the instant action, in a suit brought by the SADC in the Eastern District of Maryland, the court granted SADC summary judgment against the Trabiches, finding that they breached the Facility Agreement, and awarding SADC damages in the amount of $2,999.792.70. Compl. ¶ 39.

*Id.* Plaintiffs further stated that they would be serving subpoenas on other attorneys for information Plaintiffs believed was presumptively discoverable in light of the Trabiches' waivers. *Id*. Paul Batista, Esq. was one of the attorneys upon whom Plaintiffs served a subpoena.

Attorney Batista wrote to the Court on January 9, 2013 and stated that while he did not contest the validity of the Trabiches' waivers, he disagreed with Plaintiffs' position that the Trabiches' waivers also constituted a waiver of Defendant Russ's privilege. DE 77. In light of Russ's objections to the subpoenas, Attorney Batista also requested guidance from the Court. *Id*. On February 5, 2013, Defendants wrote the Court to join in the application of Attorney Batista to stay any responses to the subpoenas until the validity of the waivers was determined, or, in the alternative, to quash the Subpoena served on Attorney Batista. DE 81. On February 21, 2013, the Court stayed any response to the Subpoena served upon Attorney Batista until the issue of the validity of the Trabiches' waivers was determined.

On May 23, 2013, the Court held a hearing with the parties to resolve outstanding discovery issues and to address the purported waiver of attorney-client and work product privileges previously asserted by Neal and Terry Trabich. DE 89. Ultimately, after conducting a hearing and placing the Trabiches under oath, the Court determined that the Trabiches' privilege waivers were valid. *See id.* However, the Court also found that the Subpoena served upon Attorney Batista was overbroad. *Id.* ¶ 4. The Court gave Plaintiffs' counsel until June 3, 2013 to submit a modified version of the Subpoena. *Id.* Plaintiffs timely served and filed the Subpoena [DE 91-1]. The instant motion followed.

## II.      LEGAL STANDARD

Under Rule 45 of the Federal Rules of Civil Procedure, "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45( c)(3)(A)(iii)-(iv). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *see also Salvatore Studios Int'l v. Mako's Inc.*, 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Annunziato v. Collecto, Inc.*, 296 F.R.D. 112 (E.D.N.Y. 2013); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

"Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) *see John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. Sept. 19, 2012) (burden on motion to quash is borne by the moving party) (citing *Pegoraro v. Marrero*, No. 10 Civ. 0051, 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012); *Ford Motor*

7

*Credit Co. v. Meehan*, No. CV 05-4807, 2008 WL 2746373, at *5 (E.D.N.Y. July 11, 2008) ("The burden of persuasion in a motion to quash a subpoena … is borne by the movant.") (citing *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007)).

Further, "[a] determination to grant or deny … a motion to quash a subpoena is discretionary." *John*, 284 F.R.D. 185, 189 (citing *Pegoraro*, 2012 WL 1948887, at *4); *see In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68 (2d Cir. 2003); *Solomon v. Nassau County*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) ("Motions to quash subpoenas under the Rules are 'entrusted to the sound discretion of the district court.'") (quoting *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003)); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) ("The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court.") (citations omitted). Further, as a general matter, a district court has broad latitude to determine the scope of discovery and to manage the discovery process. *See, e.g., EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (*citing In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).

The attorney-client privilege applies to "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Media*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Intel Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO,* 119 F.3d 210, 214 (2d Cir. 1997); *see Media*, 655 F.3d at 132.

The so-called "work product privilege" is codified in Federal Rule of Civil Procedure 26(b)(3) which provides, in part, as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (I) they are otherwise discoverable . . . ; and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3); *see in re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003). The work product privilege "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Adman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (quoting *Hackman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385 (1947)). Unlike the attorney-client privilege, the work product privilege belongs to the attorney as well as the client, and cannot be waived by the client alone. *See Soils v. Food Employers*, 644 F.3d 221, 232 (4th Cir. 2011)*; Hackman v. Taylor*, 329 U.S. 495 (1947); *In re Grand Jury Subpoenas*, 561 F.3d 408, 411; *In re In-Store Adder. Sec. Lit.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995)).

9

## III.    DISCUSSION

The Subpoena here pertains to three separate categories of documents: (i) communications between Attorney Batista and certain of his clients; (ii) invoices for legal services rendered in the AP Links Action and fee agreements with the Trabiches and/or Global Golf; and (iii) documents related to potential conflicts of interest.  The Court examines each of these requests in turn.  In doing so, the Court notes that on May 23, 2013, Plaintiffs' counsel was directed to modify his original subpoenas which the Court found to be overly broad.  *See* DE 89.  The following discussion is directed to the modified subpoenas.

### A.    **Communications Between Batista and his Clients**

Plaintiffs' subpoena requests the following documents:

> 1. All communications with Neal Trabich concerning any legal matter involving Aaron Young, Saint Annes Development Company, LLC, AP Links, LLC, and/or Peter Rubin, excluding any communication as to which both of the following conditions were met:   (1) Jay Russ was a party to such communication and (2) the communication was made for the purpose of obtaining leal advice for or on behalf of Jay Russ.
>
> 2. All communications with Terry Trabich concerning any legal matter involving Aaron Young, Saint Annes Development Company, LLC, AP Links, LLC, and/or Peter Rubin, excluding any communications as to which both of the following conditions were met: (1) Jay Russ was a party to such communication and (2) the communication was made for the purpose of obtaining leal advice for or on behalf of Jay Russ.
>
> 3. All communications with Global Golf, Inc. concerning any legal matter involving Aaron Young, Saint Annes Development Company, LLC, AP Links, LLC, and/or Peter Rubin, excluding any communications as to which both of the following conditions were met: (1) Jay Russ was a party to such communication and (2) the communication was made for the purpose of obtaining leal advice for or on behalf of Jay Russ.

> 4. All communications with Jay Russ concerning the defense of Terry Trabich, Neal Trabich, and/or Global Golf in AP Links v. Global Golf, et al., Case No. 2:08-cv-03602 (the "AP Links Case").

*See* Subpoena [DE 91-1].

In general, Attorney Batista argues the following: (i) the Subpoena does not serve a legitimate purpose and is an example of Plaintiffs' and their counsel's "obsession" with Batista; (ii) the Subpoena would require that Batista review several thousand pages of hard copy documents that have not been electronically duplicated or stored, and are not organized in such a way that the requested documents could be easily located; and (iii) Plaintiffs' counsel is already in possession of the documents at issue, because the Trabiches "certainly" have already provided counsel with copies of the e-mail exchanges. Batista Mot. at 1-2. In their response, Defendants argue that Gordon Lenz has *not* waived his attorney-client privilege, and, therefore, any communications involving him may be subject to attorney-client privilege. Defs.' Mem. at 2. Further, since the three actions before the Eastern District involving Attorney Batista were "managed as if consolidated," according to the Defendants, there existed an "overlap in communications between all three represented parties and Batista given the inseparable litigation strategy the parties adopted." *Id.* at 2. Defendants seem to suggest that this factor in some way expands the attorney-client privilege, making the sought-after documents non-discoverable. *Id.*

Plaintiffs, on the other hand, argue that (i) Attorney Batista never made any complaints about the scope of the Subpoena when it was originally served in December 2012, when the Subpoena was more broadly drawn; (ii) Plaintiffs took pains to exclude from the scope of the Subpoena any documents over which Mr. Russ could claim privilege; (iii) Attorney Batista "surely has organized and labeled files from which the requested documents could easily be

produced; if not, Mr. Batista's lack of organization should not shield him from a legitimate discovery request;" and (iv) since Attorney Batista does not know what communications Plaintiffs have, and Plaintiffs do not know what communications Attorney Batista has, Mr. Batista's unsupported speculation that Plaintiffs are already in possession of the relevant communications is not a basis to quash the Subpoena. Pls.' Opp. at 1-2.

The Court finds that the information Plaintiffs seek is relevant and, with respect to the Trabiches, Global Golf, and Jay Russ, is non-privileged, given the Trabiches' and Global Golf's waiver of attorney-client privilege. Moreover, the requests have been modified to prevent disclosure of privileged communications involving Mr. Russ. Further, Attorney Batista has not sufficiently shown that production of the information is overly burdensome, or that because Plaintiffs may already have some of the documents in their possession, Attorney Batista should be excused from production. As pointed out by Plaintiff's counsel, since Attorney Batista does not know what communications Plaintiffs have, and Plaintiffs do not know what communications Attorney Batista has, Attorney Batista has not met his burden to show that the request is overly broad or duplicative under applicable case law. *See, e.g., Kingsway*, 2008 WL 4452134, at *4; *John Wiley & Sons*, 284 F.R.D. at 189. Further, Attorney Batista's own method of organizing his records such that they are not readily searchable – particularly where, as here, a number of the sought-after communications are expected to be e-mail communications which were at one time electronically stored – is not a sufficient reason to quash this request. Thus, Batista has not met his burden to show that the request is overly burdensome. *See, e.g., Kingsway*, 2008 WL 4452134, at *4; *John Wiley & Sons*, 284 F.R.D. at 189.

The Court notes, however, that there has been no privilege waiver with respect to Attorney Batista's clients Confer Bethpage and Gordon Lenz. Therefore, responses to the Subpoena should be tailored to exclude privileged communications that (i) involve Confer Bethpage and/or Gordon Lenz; and (ii) involve obtaining legal advice for or on behalf of Confer Bethpage and/or Gordon Lenz. The Court also notes that, in general, Attorney Batista is not required to turn over confidential attorney work product, since unlike the attorney-client privilege, the work product privilege belongs to the attorney as well as the client, and cannot be waived by the client alone. *See Soils*, 644 F.3d at 232; *Hackman*, 329 U.S. 495; (1947); *In re Grand Jury Subpoenas*, 561 F.3d at 411; *In re In-Store Adder. Sec. Lit.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995)).

Finally, with respect to Defendants' argument that an "overall litigation strategy" was used for the cases at issue here, Defendants have provided no support for this "overall strategy," other than this Court's Order of May 6, 2009 discussing how discovery in the three matters was being coordinated. Defs.' Letter, Ex. A. Notwithstanding the overlapping discovery in the matters at issue here, it should be relatively clear from each communication whether or not Attorney Batista was providing leal advice to one of the individuals or entities who have not waived their privilege, *i.e.* Russ, Confer Bethpage, and Lenz. As such, the Court is GRANTING in part and DENYING in part Attorney Batista's motion to quash, and directing him to respond to the Subpoena items 1 through 4 in accordance with the foregoing directives. Likewise, pursuant to Rule 26(b)(5), Attorney Batista is required to provide a privilege log for any documents being withheld on grounds of privilege. *See* Fed. R. Civ. P. 26(b)(5). The privilege log and the responsive documents are to be served within 21 days of this Decision and Order.

### B. Invoices and Fee Agreements with the Trabiches and/or Global Golf

The Subpoena requests the following documents:

> 5. All invoices for legal services for which payment was received from funds held by Jay Russ (or his firm) in escrow pursuant to the Asset Purchase Agreement between Global Golf, Inc. and Confer Bethpage, LLC.
>
> 6. All invoices for legal services rendered in the AP Links Case.
>
> 7. Any fee agreements with Neal Trabich, Terry Trabich, and/or Global Golf.

*See* Subpoena [DE 91-1]. Attorney Batista argues that Plaintiffs already have all of the billing and payment information sought here. Batista Mot. at 2. Batista maintains that every payment he received was made in response to detailed written statements from him, and that Plaintiffs' counsel already has the statements, the escrow records showing the payments, and the cancelled checks evidencing the payments. *Id.* Further, Attorney Batista states that he does not keep copies of any cancelled checks. *Id.* Defendants assert that the invoices maintained as part of the escrow account were already produced by Defendants to the Court for an *in camera* review, and that all payments Attorney Batista received were from the escrow account. As such, Defendants contend, the request is duplicative. Defs.' Opp. At 3. Plaintiffs' counsel claims that the escrow account listing in counsel's possession shows nine payments to Attorney Batista totaling $94,9000.00. Pls.' Mem. at 3. Further, Plaintiffs' counsel argues that he has only received three invoices in total, which were made out to "Gordon Lenz," and not Global Golf or the Trabiches. *Id.* Thus, Plaintiffs believe there is information that Attorney Batista may have that is not already in Plaintiffs' possession.

The Court finds that the information Plaintiffs seek is relevant to Plaintiffs' allegations that Russ improperly paid others who were not *bona fide* creditors of Global Golf from the company's escrow fund. However, the Court notes that Defendants have indeed already provided the Court with copies of un-redacted invoices from Adelberg Rudow and Attorney Batista which involved communications with the Trabiches or disbursements made on behalf of the Trabiches. Subsequent to the filing of the Subpoena and Plaintiffs' filing their objections to the instant motion, the Court issued a detailed Order regarding the invoices, and permitted all of the invoices to be produced to Plaintiffs in unredacted form. *See* DE 102. To the extent that the Subpoena here asks for the same information that the Court already directed Defendants to provide to Plaintiff, Attorney Batista's motion to quash is GRANTED. However, understanding that the scope of the Subpoena may be more broad than the documents reviewed by the Court, if Attorney Batista is in possession of any *additional* invoices responsive to items 5 and 6 of the Subpoena that the Court has not already ordered to be provided to the Plaintiffs, Attorney Batista is directed to produce those documents.[5] Further, Attorney Batista is also directed to produce any fee agreements with Neal Trabich, Terry Trabich, and/or Global Golf in response to item seven of the Subpoena. Finally, the Court notes that Attorney Batista's argument with respect to any canceled checks does not appear to be relevant since the Subpoena does not request copies of canceled checks.

---

[5] Since Attorney Batista is listed as a "material witness" in this action and receives ECF notifications and documents, he is in possession of the Court's order outlining what invoices should have been produced to the Plaintiffs.

### C. Documents Related to Potential Conflicts of Interest

The Subpoena further requests:

> 8. Any conflict of interest waivers sought or received from Neal Trabich, Terry Trabich, and/or Global Golf.
>
> 9. Any document pursuant to which Neal Trabich, Terry Trabich, and/or Global Golf were informed of a potential conflict of interest in Mr. Batista's representation of all defendants in the AP Links Case.
>
> 10. Any document pursuant to which Neal Trabich, Terry Trabich, and/or Global Golf were informed of a potential conflict of interest in Mr. Batista's representation of them in the AP Links Case and his representation of Mssrs. Lenz and Russ in their defamation case against Mr. Young and SADC.
>
> 11. Any joint defense agreement or joint interest agreement between or among any combination of Neal Trabich, Terry Trabich, Global Golf, Inc., Jay Russ, Confer Bethpage, LLC and Gordon Lenz.

*See* Subpoena [DE 91-1]. Attorney Batista denies there was any conflict of interest between his clients, and for that reason represents that he is not in possession of any responsive documents. Batista Mot. at 2. Plaintiffs vehemently disagree with Batista's interpretation of whether or not a conflict of interest existed and point out that Batista was defending the Trabiches in the AP Links Action while simultaneously prosecuting the Defamation Action. Pls.' Opp. at 2. In the Defamation Action, Gordon Lenz, also Batista's client, apparently claimed that he was defamed because a Maryland newspaper article connected him with a criminal, Mr. Trabich. *Id.* Since Batista sought to consolidate those actions, Plaintiffs argue that Attorney Batista must have sought a conflict waiver because two of Mr. Batista's clients (Lenz and Russ) would be calling Mr. Batista's other client (Mr. Trabich) a criminal, while at the same time Attorney Batista

16

would necessarily have to argue that Mr. Trabich should be believed when testifying in defense of AP Links' claims. *Id.*

However, whether or not the Plaintiffs agree with Attorney Batista's interpretation of the necessity of a conflict waiver (or lack thereof) is of no consequence. Attorney Batista has represented that, based on his interpretation of the underlying facts and circumstances at issue here, his clients were never informed of a conflict of interest and never made to sign any such documents. Batista Mot. At 2. Therefore, Attorney Batista represents, he is not in possession of documents responsive to items 8-11 of the Subpoena. Based on these representations, the Court is GRANTING Attorney Batista's motion to quash with respect to the documents sought in Request Nos. 8-11.

## IV. CONCLUSION

For the foregoing reasons, Attorney Batista's motion to quash is GRANTED in part and DENIED in part as set forth in this Order. However, since the statute of limitations for Plaintiffs' claims against Defendants is three years, the scope of the subpoena is limited to the three year time period prior to the filing of the Complaint in this action.[6] Since the Complaint was filed on December 11, 2009, Attorney Batista need not provide responsive documents prior

---

[6] *Malmsteen v. Berdon, LLP*, 369 Fed. App'x 248, 249 (2d Cir. 2010) (statute of limitations claim for breach of fiduciary duty is three years where money damages are sought) (citing *Weiss v. T.D. Waterhouse,* 45 A.D.3d 763, 847 N.Y.S.2d 94, 95 (2007)); *Beckles v. George*, No. 07 CV 0584, 2008 WL 926578, at *3 (E.D.N.Y. 2008) (citing *Gap, Inc. v. Fisher Dev., Inc.,* 27 A.D.3d 209, 212, 810 N.Y.S.2d 456 (N.Y. App. Div. 2006) (applying a three year statute of limitations to a third party beneficiary claim); *AMS Group LLC v. J.P. Morgan Chase Bank*, 371 Fed. App'x 149, 150 (2d Cir. 2010) (tortious interference claim subject to three year statute of limitations).

to December 11, 2006, if any.  Attorney Batista is directed to provide any responsive documents to Plaintiffs' counsel within 21 days of this Decision and Order

**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge